**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| MPACT BEVERAGE SOLUTIONS, LLC and STACKED WINES, LLC., *Plaintiffs-Counterclaim Defendants*,<br><br>v.<br><br>BUZZBALLZ, LLC, *Defendant-Counterclaim Plaintiff*. | C.A. No. 1:25-CV-01219-JLH<br><br>**DEMAND FOR JURY** |

**PLAINTIFFS' OPENING BRIEF IN SUPPORT OF ITS RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS**

DATED: October 12, 2026

OF COUNSEL:

Ehsun Forghany (*pro hac vice*)
Amar S. Naik (*pro hac vice*)
ARENTFOX SCHIFF LLP
44 Montgomery Street,
38th Floor
San Francisco, CA 94104
T: (415) 757-5500
ehsun.forghany@afslaw.com
amar.naik@afslaw.com

BAYARD, P.A.

Stephen B. Brauerman (No. 4952)
Ronald P. Golden, III (No. 6254)
600 N. King Street, Suite 400
P.O. Box 25130
Wilmington, DE 19899
T: (302) 658-6395
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Plaintiffs MPACT BEVERAGE SOLUTIONS, LLC and STACKED WINES, LLC*

**TABLE OF CONTENTS**


TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

BACKGROUND ........ 1

A. The Patented Container ........ 1

B. The Accused Container ........ 3

C. BuzzBallz's Demand Letter ........ 4

D. Procedural History ........ 5

LEGAL STANDARDS ........ 5

A. Motion for Judgment on the Pleadings ........ 5

B. The Ordinary Observer Test for Design Patents ........ 6

C. The Ordinary Observer Test Can Be Applied on the Pleadings ........ 7

D. Courts Can Take Judicial Notice of Patents, Prior Art, and Exhibits to Pleadings ........ 8

ARGUMENT ........ 9

A. The Containers Are "Plainly Dissimilar" ........ 10

B. The Containers Are Not Substantially the Same in View of the Prior Art ........ 15

CONCLUSION ........ 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Kimberly-Clark Corp.*,
570 F. App'x 927 (Fed. Cir. 2014) ....................9

*Anderson v. Kimberly-Clark Corp.*,
No. 12-cv-1979-RAJ, 2013 WL 9760040 (W.D. Wash. Sept. 25, 2013), *aff'd*,
570 F. App'x 927 (Fed. Cir. 2014) ....................7

*B & D Techs., LLC v. Curtis Indus., LLC*,
759 F. Supp. 3d 288 (D. Mass. 2024) ....................7

*Beteiro, LLC v. BetMGM, LLC*,
626 F. Supp. 3d 789 (D.N.J. 2022) ....................9

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997)....................5

*Colida v. Nokia, Inc.*,
No. 2009-1326, 2009 WL 3172724 (Fed. Cir. Oct. 6, 2009)....................7

*Crocs, Inc. v. Int'l Trade Comm'n*,
598 F.3d 1294 (Fed. Cir. 2010)....................6

*Dyson, Inc. v. SharkNinja Operating LLC*,
No. 14-cv-00779, 2018 WL 1906105 (N.D. Ill. Mar. 29, 2018) ....................14, 15

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
543 F.3d 665 (Fed. Cir. 2008) (en banc).................... *passim*

*Elmer v. ICC Fabricating, Inc.*,
67 F.3d 1571 (Fed. Cir. 1995)....................6

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*,
796 F.3d 1312 (Fed. Cir. 2015)....................6, 7, 10, 11

*Genetic Techs. Ltd. v. Bristol-Myers Squibb Co.*,
72 F. Supp. 3d 521 (D. Del. 2014)....................9

*Hoganas AB v. Dresser Indus., Inc.*,
9 F.3d 948 (Fed. Cir. 1993)....................8

*L.A. Gear, Inc. v. Thom McAn Shoe Co.*,
988 F.2d 1117 (Fed. Cir. 1993)....................6

*Lanard Toys Ltd. v. Dolgencorp LLC*,
958 F.3d 1337 (Fed. Cir. 2020)....................6

*Lanard Toys Ltd. v. Toys "R" Us-Delaware, Inc.*,
No. 15-cv-00849, 2019 WL 1304290 (M.D. Fla. Mar. 21, 2019), *aff'd sub nom. Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337 (Fed. Cir. 2020)....................16

*In re Mann*,
861 F.2d 1581 (Fed. Cir. 1988)....................6

*McIntire v. Sunrise Specialty Co.*,
944 F. Supp. 2d 933 (E.D. Cal. 2013)....................15

*Minka Lighting, Inc. v. Maxim Lighting Int'l, Inc.*,
No. CIV.A. 3:06-CV-995-K, 2009 WL 691594 (N.D. Tex. Mar. 16, 2009)....................15, 20

*Moose Mountain Toymakers Ltd. v. Majik Ltd., LLC*,
No. 10-cv-4934-DMC, 2011 WL 3625057 (D.N.J. Aug. 12, 2011)....................7

*Over Active Imaginations Inc. v. Amazon.com Inc.*,
737 F. Supp. 3d 1094 (W.D. Wash. 2024)....................8

*Performance Designed Prods. LLC v. Mad Catz, Inc.*,
No. 16-cv-00629, 2016 WL 3552063 (S.D. Cal. June 29, 2016)....................8

*Radware, Ltd. v. A10 Networks, Inc.*,
No. 13-cv-02021, 2014 WL 61047 (N.D. Cal. Jan. 7, 2014)....................9

*Richardson v. Stanley Works, Inc.*,
597 F.3d 1288 (Fed. Cir. 2010)....................6, 11

*Rosenau v. Unifund Corp.*,
539 F.3d 218 (3d Cir. 2008)....................5

*SCG Characters LLC v. Telebrands Corp.*,
No. 15-cv-00374, 2015 WL 4624200 (C.D. Cal. Aug. 3, 2015)....................9

*Turbe v. Gov't of Virgin Islands*,
938 F.2d 427 (3d Cir. 1991)....................5

*Turner v. Lieutenant Driver*,
848 F.3d 678 (5th Cir. 2017)....................8

*Venetec Int'l, Inc. v. Nexus Med., LLC*,
541 F. Supp. 2d 612 (D. Del. 2008)....5

*Wepay Glob. Payments LLC v. PNC Bank N.A.*,
No. 2:22-cv-00592, 2022 WL 1782504 (W.D. Pa. June 1, 2022)....8

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)....5, 7

Fed. R. Civ. P. 12(c)....1, 1, 5, 7

FED. R. EVID. 201(b)....8

## INTRODUCTION

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, Plaintiffs Mpact Beverage Solutions, LLC ("Mpact") and Stacked Wines, LLC ("Stacked" and collectively, "Plaintiffs") move this Court to enter judgment on the pleadings declaring that Plaintiffs do not infringe directly, contributorily, or by inducement, literally or under the doctrine of equivalents, any claim of U.S. Design Patent No. D1,080,384 (the "D'384 Patent") and dismissing BuzzBallz, LLC's ("BuzzBallz") Counterclaim in its entirety.

As set forth in the Amended Complaint (D.I. 13) and BuzzBallz's Counterclaim (D.I. 23), the D'384 Patent (D.I. 13-1 at 2-7) claims a specific ornamental design for a beverage container. The pleadings make clear the claimed design of the D'384 Patent (the "Patented Container") looks so different than the container used for Mpact's ready-to-drink ("RTD") craft cocktail product "MAX High ABV Ready-To-Drink Cocktail" (the "Accused Container") that no ordinary observer could plausibly confuse the two. Further, the containers are not substantially the same in light of the prior art, including prior art referenced by the D'384 Patent itself.

Because there are no material issues of fact that need to be resolved and no disputes on the applicable law, this Court should enter judgment on the pleadings declaring that the Accused Container does not infringe the D'384 Patent and dismissing BuzzBallz's Counterclaim.

## BACKGROUND

### A. The Patented Container

The D'384 Patent was filed on January 16, 2025 and issued on June 24, 2025. (D.I. 13 at ¶ 69; D.I. 23 at 11, ¶ 69.) The D'384 Patent includes a side view of the beverage container (Fig. 1) and a bottom view of the beverage container (Fig. 2), reproduced below, and its sole

claim recites "[t]he ornamental design for a beverage container as shown and described." (D.I. 13 at ¶ 69; D.I. 23 at 11, ¶ 69.)



FIG. 1



FIG. 2

D'384 Patent, Figs. 1 and 2

The D'384 Patent claims a neck portion (*green*), the shoulder portion (*red*), and the base portion (*blue*) of a spherical container; the broken lines in the figures depict the portions of the container that form no part of the claimed design. (D.I. 13 at ¶ 70; D.I. 23 at ¶ 70.)




FIG. 1

D'384 Patent, Fig. 1 (annotated)

The neck portion of the D'384 claimed container design is defined by a curved profile that forms an angular, concave neck for the container. (D.I. 13 at ¶ 71; D.I. 23 at ¶ 71.)




D’384 Patent, Fig. 1 (annotated)




D’384 Patent, Fig. 1 (cropped and annotated)

The base portion of the claimed container design is defined by a curved profile that forms a gradually sloped base for the container. (D.I. 13 at ¶ 73; D.I. 23 at ¶ 73.)




D’384 Patent, Fig. 1 (annotated)




D’384 Patent, Fig. 1 (cropped and annotated)

### B. The Accused Container

Mpact markets, offers to sell, and sells RTD cocktail products known as the “MAX High ABV Ready-To-Drink Cocktail.” (D.I. 13 at ¶¶ 2, 4; D.I. 23 at 20, ¶ 15.) For these MAX products, Mpact licenses and uses the Accused Container Stacked first developed and commercialized. (D.I. 13 at ¶ 74; D.I. 23 at 20, ¶ 16; Declaration of Ehsun Forghany (“Forghany Decl.”), Ex. 34 at 2-3.)

| The Patented Design (US D1,080,384) | The Accused Design (Mpact Container) |
|---|---|
|  FIG. 1 |  |

### C. BuzzBallz's Demand Letter

On September 19, 2025, BuzzBallz sent Mpact a letter ("Demand Letter") alleging that the Accused Container infringes the D'384 Patent. (D.I. 13 at 24, ¶ 64; D.I. 23 at 10, ¶ 64.) The Demand Letter attached infringement charts purportedly mapping the Accused Container to the claimed design of the D'384 Patent. (D.I. 13 at 1, ¶ 2; D.I. 13-1 at 12, D.I. 23 at 2, ¶ 2.)

The Demand Letter insisted that Mpact "[i]mmediately and permanently cease and desist from manufacturing, using, importing, marketing, selling, and offering to sell the Infringing Containers in any jurisdiction." (D.I. 13 at 24, ¶ 65; D.I. 23 at 10, ¶ 65.) It further stated: "[I]t is imperative that by October 1, 2025, MPact comply with the above demands and provide me with written verification of your compliance. Should you fail to do so, BuzzBallz is prepared to pursue prompt legal action for patent infringement, seeking injunctive relief, monetary damages, costs, and attorneys' fees." (D.I. 13 at 24, ¶ 66; D.I. 23 at 11, ¶ 66.) BuzzBallz has a demonstrated history of enforcing patents related to the D'384 Patent against competitors before or shortly after the sale

of competing containers in the United States. (D.I. 13 at 24, ¶ 66; D.I. 23 at 11, ¶ 66.) Finally, BuzzBallz demanded that Mpact identify all parties "from which MPact has purchased and/or licensed the Infringing Containers" and "involved in the manufacturing and production of the Infringing Containers." (D.I. 13 at 25, ¶ 67; D.I. 23 at 11, ¶ 67.)

### D. Procedural History

On October 1, 2025, Mpact and Stacked filed suit for declaratory judgment of patent non-infringement against BuzzBallz. (D.I. 1.) Mpact and Stacked filed an Amended complaint on November 6, 2025. (D.I. 13.) After the Court denied BuzzBallz's Motion to Dismiss (D.I. 22), BuzzBallz filed its Answer and Counterclaim for patent infringement on September 3, 2026. (D.I. 23.) On September 24, 2026, Mpact filed its Answer to BuzzBallz's Counterclaim. (D.I. 25.) The pleadings are now closed.

## LEGAL STANDARDS

### A. Motion for Judgment on the Pleadings

A party may move for judgment on the pleadings under Rule 12(c) after pleadings are closed. While courts view factual allegations in favor of a non-moving party, they will grant such motions when "the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008). This is the same as Rule 12(b)(6). *Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991). Such motions can resolve cases where "material facts are undisputed and judgment can be entered on the competing pleadings and exhibits thereto, and documents incorporated by reference." *Venetec Int'l, Inc. v. Nexus Med., LLC*, 541 F. Supp. 2d 612, 617 (D. Del. 2008); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (explaining that documents integral to pleadings may be considered with a Rule 12(c) motion).

### B. The Ordinary Observer Test for Design Patents

A design patent "is directed to the appearance of an article of manufacture." *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993). It contains only a single claim to the ornamental (non-functional) design of the specified article "as shown and described." *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995); *see also Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293 (Fed. Cir. 2010) (explaining that a design patent "limits protection to the ornamental design"); *In re Mann*, 861 F.2d 1581, 1582 (Fed. Cir. 1988) (holding that design patents "have almost no scope" and are "limited to what is shown in the application drawings").

Courts employ the "ordinary observer" test to determine "whether an ordinary observer, familiar with the prior art, would be deceived into thinking that the accused design was the same as the patented design." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 672 (Fed. Cir. 2008) (en banc). This test focuses on overall ornamental visual impression rather than "similarities of ornamental features in isolation." *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1335 (Fed. Cir. 2015). A proper comparison involves viewing the patented and accused design, considering both the overall designs and ornamental differences, and determining "the impact of the ornamental differences on the overall design[.]" *Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1344 (Fed. Cir. 2020); *see also Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1304 (Fed. Cir. 2010) (requiring a "side-by-side view comparison" of the patented and accused designs).

The ordinary observer test has two steps. First, "where the claimed and accused designs are 'sufficiently distinct' and 'plainly dissimilar,' the patentee fails to meet its burden of proving infringement as a matter of law." *Ethicon*, 796 F.3d at 1335. "***In some instances***, the claimed design and the accused design will be sufficiently distinct that ***it will be clear without more that***

***the patentee has not met its burden*** of proving the two designs would appear 'substantially the same' to the ordinary observer[.]" *Egyptian Goddess*, 543 F.3d at 678 (emphasis added).

Second, if the designs are not plainly dissimilar, "the inquiry may benefit from comparing the claimed and accused designs with prior art to identify differences that are not noticeable in the abstract but would be significant to the hypothetical ordinary observer familiar with the prior art." *Ethicon*, 796 F.3d at 1335; *see also Egyptian Goddess*, 543 F.3d at 678 ("[D]ifferences between the claimed and accused designs that might not be noticeable in the abstract can become significant to the hypothetical ordinary observer who is conversant with the prior art.").

If at either step it is determined that the "designs are 'sufficiently distinct' and 'plainly dissimilar,' the patentee fails to meet its burden of proving infringement as a matter of law." *Ethicon*, 796 F.3d at 1335.

### C. The Ordinary Observer Test Can Be Applied on the Pleadings

District courts apply the ordinary observer test on a Rule 12(c) motion for judgment on the pleadings when the pleadings reveal that the accused and patented designs are plainly dissimilar. *See e.g.*, *Anderson v. Kimberly-Clark Corp.*, No. 12-cv-1979-RAJ, 2013 WL 9760040, at *3 (W.D. Wash. Sept. 25, 2013), *aff'd*, 570 F. App'x 927 (Fed. Cir. 2014) (granting a Rule 12(c) motion and issuing a declaratory judgment that none of the accused products infringe the patented design); *see also B & D Techs., LLC v. Curtis Indus., LLC*, 759 F. Supp. 3d 288, 296-301 (D. Mass. 2024) (applying the ordinary observer test and granting a Rule 12(c) motion after comparing the patented design with photographs of the accused product); *Moose Mountain Toymakers Ltd. v. Majik Ltd., LLC*, No. 10-cv-4934-DMC, 2011 WL 3625057, at *3 (D.N.J. Aug. 12, 2011) (same).

This is consistent with well-established precedent applying the ordinary observer test in similar Rule 12(b)(6) contexts. *Colida v. Nokia, Inc.*, No. 2009-1326, 2009 WL 3172724, at *2

(Fed. Cir. Oct. 6, 2009) (affirming that no ordinary observer would confuse the patented and accused designs); *Over Active Imaginations Inc. v. Amazon.com Inc.*, 737 F. Supp. 3d 1094, 1101-05 (W.D. Wash. 2024) (finding that an ordinary observer would not believe the accused products are the same as the asserted patents and pointing out the "overwhelming authority" dismissing design patent infringement cases on the pleadings after applying the ordinary observer test).

Courts also regularly determine on the pleadings that the patented and accused designs are not substantially the same in light of the prior art. *See, e.g.*, *Wepay Glob. Payments LLC v. PNC Bank N.A.*, No. 2:22-cv-00592, 2022 WL 1782504, at *3 (W.D. Pa. June 1, 2022) (concluding that any similarity appeared much like the prior art); *Performance Designed Prods. LLC v. Mad Catz, Inc.*, No. 16-cv-00629, 2016 WL 3552063, at *6 (S.D. Cal. June 29, 2016) (explaining that prior art revealed that an ordinary observer would not confuse the accused and patented designs).

### D. Courts Can Take Judicial Notice of Patents, Prior Art, and Exhibits to Pleadings

Courts may take judicial notice of an adjudicative fact "that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). "'Specific facts and propositions of generalized knowledge which are capable of immediate and accurate determination by resort to easily accessible sources of indisputable accuracy may be judicially noticed.'" *Turner v. Lieutenant Driver*, 848 F.3d 678, 692 n.63 (5th Cir. 2017) (quoting *Weaver v. United States*, 298 F.2d 496, 498–99 (5th Cir. 1962)).

Courts routinely take judicial notice of patents, patent applications, prior art, U.S. Patent and Trademark Office ("USPTO") correspondence, patent applications, and other aspects of patent prosecution history. *See Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 954 n.27 (Fed. Cir. 1993) (recognizing that a court may take judicial notice of a patent and USPTO correspondence); *see also*

*Beteiro, LLC v. BetMGM, LLC*, 626 F. Supp. 3d 789, 793 n.2 (D.N.J. 2022) (taking judicial notice of a patent); *Genetic Techs. Ltd. v. Bristol-Myers Squibb Co.*, 72 F. Supp. 3d 521, 526 (D. Del. 2014) (taking judicial notice of prosecution histories); *Radware, Ltd. v. A10 Networks, Inc.*, No. 13-cv-02021, 2014 WL 61047, at *3 (N.D. Cal. Jan. 7, 2014) (taking judicial notice of prior art).

Courts may consider authentic photographs when applying the ordinary observer test because they "are visual representations" that help "compar[e] the drawings of the patented design to the appearance of the accused products[.]" *Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 932 (Fed. Cir. 2014); *SCG Characters LLC v. Telebrands Corp.*, No. 15-cv-00374, 2015 WL 4624200, at *6 (C.D. Cal. Aug. 3, 2015) ("[T]he Court may consider the patents and the images of the accused products without converting the motion to dismiss into one for summary judgment.").

Thus, Plaintiffs ask this Court to take judicial notice of the D'384 Patent (D.I. 13-1 at 1-7), BuzzBallz's Demand Letter (D.I. 13-1 at 9-12), and several Stacked Patents (D.I. 13-1 at 13-71), all of which were exhibits to the Amended Complaint. Plaintiffs also ask this Court to take judicial notice of patents and/or prior art listed cited on the face of the D'384 Patent (*see* Forghany Decl. ¶¶ 3-19, Exs. 1-17)) and other prior art (*id.* ¶¶ 20-35, Exs. 18-33). Plaintiffs further ask this Court to take judicial notice of exhibits containing figures of the D'384 Patent, undisputable photographs of the Accused Container, and prior art. (*Id.* ¶¶ 36-38, Exs. 34-38; *see also* D.I. 13-1 at 72-87.)

## **ARGUMENT**

A simple comparison shows that the Accused Container is plainly dissimilar from the beverage container design claimed by the D'384 Patent, and thus, cannot infringe the D'384 Patent. *First*, the overall design of the Accused Container is "plainly dissimilar" from the design shown in the figures of the D'384 Patent. *Second*, the differences between the Accused and Patented

Containers are even more apparent and significant in light of the prior art such that no reasonable fact-finder could find the two designs to be "substantially similar" in light of the prior art.

### A. The Containers Are "Plainly Dissimilar"

A simple comparison shows that the Accused Container is plainly dissimilar from the beverage container design claimed by the D'384 Patent, and thus, cannot infringe the D'384 Patent. *Ethicon*, 796 F.3d at 1335; *see also Egyptian Goddess*, 543 F.3d at 678.

| The Patented Design (US D1,080,384) | The Accused Design (Mpact Container) |
| --- | --- |
|  FIG. 1 |  |

The most obvious difference between the two designs is the angular concave neck of the D'384 Patent as compared to the perpendicular neck design of the Accused Container. (D.I. 13 at ¶ 77, D.I. 13-1 at 78; *see also* Forghany Decl. Ex. 34 at 4.)




The D’384 Patent claims an angular concave neck design; in contrast, the Accused Container incorporates a perpendicular neck design, making the designs “plainly dissimilar.” This distinction is sufficient to find that the Accused Container does not infringe the D’384 Patent. *Richardson*, 597 F.3d at 1288 (“In a side-by-side comparison . . . the overall effect of this streamlined theme makes the [accused] tools significantly different from [patented] design.”); *Ethicon.*, 796 F.3d at 1336 (“[T]he most obvious difference . . . [w]as ‘the overall contoured shape’ of the claimed design and the ‘overall linear shape’ of the accused design.”).

BuzzBallz tries to manufacture an infringement claim by superimposing angular concave profile (*light green border*) on the neck portion of the Accused Container in its Demand Letter. (D.I. 13-1 at 12). But as shown below, the Accused Container does not have an angular concave neck design; it has a perpendicular neck with a completely different shape and form factor. (*Id.*).

**BuzzBallz Cease and Desist Letter**



Recognizing this failure, BuzzBallz's Counterclaim removes a component of the Accused Container (i.e., the lid), uses a tilted, low-resolution depiction of the Accused Container, and again superimposes an angular concave profile on the Accused Container's neck. (D.I. 23 at 22, ¶ 23.) But this comparison still shows a difference in shape and form factor between the two designs. There is no disputing that even the lidless Accused Container lacks the superimposed angular concave profile placed by BuzzBallz. As shown below, the perpendicular neck of the lidless Accused Container creates a substantially different overall appearance than the one created by the angular concave neck of the D'384 Patent, thereby making the two containers plainly dissimilar. (Forghany Decl. Ex. 34 at 5.)

| The Patented Design (US D1,080,384) | The Accused Design (Mpact Container) |
|---|---|
|  |  |

Numerous container designs with perpendicular necks are cited on the face of the D’384 Patent, including the Stacked patents disclosing the Accused Container, showing that even BuzzBallz viewed the Patented and Accused Containers to be patentably distinct. (D.I. 1-1 at 3.)




The angular concave neck design claimed by the D’384 Patent creates a distinct visual impression when compared to the ***perpendicular*** neck design of the Accused Container. The perpendicular neck in the Accused Container (both with and without a lid) looks different from the ***angular concave*** neck in the Patented Container. These differences in shape, size, and form come

together "to create a substantially different overall ornamental appearance." *Dyson, Inc. v. SharkNinja Operating LLC*, No. 14-cv-00779, 2018 WL 1906105, at *13 (N.D. Ill. Mar. 29, 2018).

Other meaningful differences exist between the Accused and Patented Containers. When comparing the base of each container, the D'384 Patent claims a gradually sloping base design while the Accused Container uses a sharply cornered base design. (D.I. 13 at 79; D.I. 13-1 at 79; *see also* Forghany Decl. Ex. 34 at 6.)




As another example, the D'384 Patent claims a base design that is significantly narrower than the mouth of the container, whereas the Accused Container has a base design that is significantly wider than the mouth of the container. This was intentional. As disclosed in the Stacked patents such as U.S. Patent No. 10,336,496, the rim of the Accused Container is intentionally designed to be smaller than the base to allow the Accused Containers to be coupled together and stacked on top of one another. (D.I. 13-1 at 66, ¶ 0037 ("[T]he outer circumference or circumference maxima $C_R$ of the rim 22 will be between 0 and 15% less than the circumference $C_R$ of base 16."); *Id.* at 68, ¶ 0062 ("Thus an assembly 200 of four beverage containers 10, 10′, 10″, 10‴ positioned in stacked

end-to-end relationship will have the approximate height of a standard wine bottle.").) Thus, the claimed design of the D'384 Patent creates a significantly different visual impression than the triangular form factor of the Accused Container created by its wider-base design, as shown in the comparison chart below. (Forghany Decl. Ex. 34 at 7; *see also* D.I. 13 at 81-82; D.I. 13-1 at 82-83.)




The differences between the Accused and Patented Containers are precisely the kinds of design differences that courts find dispositive of non-infringement. *Dyson, Inc.*, 2018 WL 1906105, at *12; *Minka Lighting, Inc. v. Maxim Lighting Int'l, Inc.*, No. CIV.A. 3:06-CV-995-K, 2009 WL 691594, at *6 (N.D. Tex. Mar. 16, 2009); *McIntire v. Sunrise Specialty Co.*, 944 F. Supp. 2d 933, 941 (E.D. Cal. 2013).

Thus, a simple comparison of the D'384 Patent with the design of the Accused Container, without more, demonstrates that two designs are "plainly dissimilar," warranting judgment.

**B. The Containers Are Not Substantially the Same in View of the Prior Art**

While the Patented and Accused Containers are "plainly dissimilar," the Accused Container also does not infringe in view of the closeness of the prior art container designs to the D'384 Patent. Where, as here, "the claimed design is close to the prior art designs, small differences between the

accused design and the claimed design are likely to be important to the eye of the hypothetical ordinary observer." *Egyptian Goddess*, 543 F.3d at 665.

The D'384 Patent design claims the neck portion, shoulder portion, and base portion of a container. But these are common, generic features commonly used in container designs predating the D'384 Patent. (*See* Forghany Decl. Exs. 1-33.) Thus, while the ordinary observer will recognize that the Patented and Accused Container share common, generic container features, that "does not mean the ordinary observer will be deceived into believing they are using the *same* design." *Lanard Toys Ltd. v. Toys "R" Us-Delaware, Inc.*, No. 15-cv-00849, 2019 WL 1304290, at *15 (M.D. Fla. Mar. 21, 2019), *aff'd sub nom. Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337 (Fed. Cir. 2020). Quite the opposite; the similar prior art designs and design features "highlight the distinctions between the claimed design and the accused design" to the ordinary observer. *Egyptian Goddess*, 543 F.3d at 677. For this reason, even small differences between the Patented and Accused Containers would be readily apparent to any ordinary observer familiar with the prior art.

To be sure, numerous prior art containers incorporate an angular concave neck design close in appearance, if not identical, to the angular concave neck design claimed by the D'384 Patent. (*See* Forghany Decl. Ex. 36 (charts compiling prior art patents that disclose either an angular neck or an angular concave neck design for a beverage container); *see also* D.I. 13 at ¶ 88.)

Where, as here, "the claimed design is close to the prior art designs, small differences between the accused design and the claimed design are likely to be important to the eye of the hypothetical ordinary observer." *Egyptian Goddess*, 543 F.3d at 676. Since both the Patented and Prior Art Containers incorporate an angular concave neck, the ordinary observer would even more readily notice the differences between the perpendicular neck design of the Accused Container and

the angular concave neck design claimed by the D'384 Patent, as shown by the example below. (Forghany Decl. Ex. 35 at 2.)




This is true regardless of whether the Accused Container has a lid. Because the lid mates with the neck of the container, the neck of the Accused Container is also perpendicular. Since both the Patented and Prior Art Containers incorporate an angular concave neck, the ordinary observer would even more readily notice the differences between the perpendicular neck design of the lidless Accused Container and the angular concave neck design claimed by the D'384 Patent, as shown by the example below. (Forghany Decl. Ex. 35 at 3.)




Conversely, numerous prior art containers incorporate a perpendicular neck design that is close in appearance to the perpendicular neck of the Accused Container. (*See* Forghany Decl. Ex.

37 (charts compiling exemplary prior art references that disclose a perpendicular neck design for a container); *see also* D.I. 13 at ¶ 90.) "When the differences between the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art." *Egyptian Goddess*, 543 F.3d at 676. And since both the accused and prior art designs incorporate a perpendicular neck design, the ordinary observer would even more readily notice the differences between the angular concave neck design claimed by the D'384 Patent and the perpendicular neck design of the Accused Container, as shown below. (Forghany Decl. Ex. 35 at 4.)




The D'384 Patent's angular concave neck design is a distinguishing feature of its design over such prior art neck designs. The ordinary observer would therefore be drawn to the angular concave neck of the container design claimed by the D'384 Patent, which is not present in the Accused Container. The absence of the angular concave neck in the Accused Container would thus be readily apparent. The ordinary observer considering the Patented and Accused Containers in light of the prior art container designs would not find the designs to be "substantially similar."

Further, numerous prior art containers incorporate a gradually sloping base design that is close, if not identical, to the gradually sloping base of the container claimed by the D'384 Patent.

(*See* Forghany Decl. Ex. 38 (charts compiling exemplary prior art disclosing a gradually sloping base design); *see also* D.I. 13 at ¶¶ 93-95.)

Where, as here, "the claimed design is close to the prior art designs, small differences between the accused design and the claimed design are likely to be important to the eye of the hypothetical ordinary observer." *Egyptian Goddess*, 543 F.3d at 676. Since both the patented and prior art container designs incorporate a gradually sloping base, the ordinary observer would more readily notice the differences between the sharply corned base design of the Accused Container and the gradually sloping base design claimed by the D'384 Patent. (Forghany Decl. Ex. 35 at 5.)




The Accused Container's sharply cornered base design is a distinguishing feature over such prior art container designs. The ordinary observer would therefore be drawn to the sharply cornered base design of the Accused Container, which is not present in the gradually sloping base of the spherical container design claimed by the D'384 Patent. *Egyptian Goddess*, 543 F.3d at 676. The absence of the gradually sloping base design in the Accused Container would thus be readily apparent. Put differently, the ordinary observer, when considering the Patented Container and the Accused Container, in light of the prior art container designs, would ***not*** find the design of the Accused Container to be the same or substantially the same as that of the Patented Container.

The ordinary observer would recognize that the Accused Container and the D'384 Patent each depart from the prior art designs in different ways. "Under the ordinary observer standard, a patented design that consists 'only of bringing together old elements with slight modifications of form' is not infringed by 'another who uses the same elements with his own variations of form . . . if his design is distinguishable by the ordinary observer from the patented design.'" *Minka*, 2009 WL 691594, at *6 (quoting *Zidell v. Dexter*, 262 F. 145, 146 (1920)). Here, the D'384 Patent claims a spherical container with an angular concave neck and a gradually sloping base design while the Accused Container incorporates a perpendicular neck and a sharply cornered base design. These variations between the Patented Container and the Accused Container would be readily noticeable to the ordinary observer.

Accordingly, no reasonable fact finder would find that an ordinary observer, taking into account the prior art container designs, would believe the Accused Container to be the same or substantially the same as the Patented Container. For this additional and independent reason, the Accused Container cannot infringe the D'384 Patent as a matter of law.

## **CONCLUSION**

For the above reasons, the Court should enter judgment on the pleadings declaring that the Accused Container does not infringe the D'384 Patent and dismissing BuzzBallz's Counterclaim.

DATED: October 12, 2026

BAYARD, P.A.

/s/ *Stephen B. Brauerman*
Stephen B. Brauerman (No. 4952)
Ronald P. Golden, III (No. 6254)
600 N. King Street, Suite 400
P.O. Box 25130
Wilmington, DE 19899
T: (302) 658-6395
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Plaintiffs MPACT BEVERAGE SOLUTIONS, LLC and STACKED WINES, LLC*

OF COUNSEL

Ehsun Forghany (*pro hac vice*)
Amar S. Naik (*pro hac vice*)
ARENTFOX SCHIFF LLP
44 Montgomery Street,
38th Floor
San Francisco, CA 94104
T: (415) 757-5500
ehsun.forghany@afslaw.com
amar.naik@afslaw.com